UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DENNIS E. MENTZOS, II,

Plaintiff,

v.

DEBBIE JAMES,

Defendant.

Civil File No. 02-384 (MJD/AJB)

**REPORT AND RECOMMENDATION**

Plaintiff, a civilly committed sex offender, is seeking relief under 42 U.S.C. § 1983 for alleged violations of his federal constitutional rights. When he started this case, Plaintiff was attempting to sue four state employees who work with the Minnesota Sex Offender Program, ("MSOP"), but his claims against three of those Defendants have already been dismissed. (Order dated February 11, 2003; [Docket No. 16].) The one remaining Defendant, Debbie James, has filed a motion for summary judgment, (Docket Nos. 26 and 27), contending that Plaintiff's surviving claim against her should also be dismissed.

This matter has been referred to the undersigned Magistrate Judge of the District Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, it will be recommended that Defendant James's motion for summary judgment be granted, and that this action be dismissed with prejudice.

## I. BACKGROUND

The factual background of this case was described in this Court's previous Report and Recommendation, ("R&R"), which caused the dismissal of Plaintiff's claims against three of the original defendants. (R&R dated December 20, 2002; [Docket No. 13].) Rather than repeating the full case history here, the Court will summarize the background

FILED SEP 22 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

information provided in the previous R&R, and highlight those facts that are most relevant to Plaintiff's remaining claim against Defendant James.

Plaintiff was civilly committed as a "Sexually Dangerous Person" under Minnesota law based on his extensive record of sexually abusing women and girls. In late 2001, the Chief Operating Officer of the MSOP learned that Plaintiff had been carrying on a long distance relationship with a thirteen year old girl who lived in San Jose, California. The police in San Jose had discovered that Plaintiff had been calling the girl frequently, and sending her presents as well. They also had discovered that Plaintiff had mailed letters to the girl that included explicit descriptions of sex acts, that he had sent the girl pornographic videos and sex toys, and that he had engaged in "phone sex" with the girl -- encouraging her to masturbate, while he apparently did likewise, as they talked on the telephone. Nude pictures of the girl were found at the MSOP treatment facility, and the girl acknowledged that she had mailed the pictures to Plaintiff at his request.[1]

Based on the information provided by California law enforcement authorities, the staff at the MSOP placed certain restrictions on Plaintiff's mail privileges. All of Plaintiff's incoming and outgoing correspondence was to be inspected by a staff member in Plaintiff's presence. If any reference to the California girl was discovered, supervisory officials were to be notified. The policy statement that established the restrictions on Plaintiff's mailing privileges did not specifically indicate what should be done with any incoming or outgoing

---

[1] Copies of some of the records from the San Jose police investigation are attached to the affidavit of Michael E. Burns. (Docket No. 29.)

correspondence that Plaintiff was unwilling to submit to inspection.[2]

Plaintiff's claim against Defendant James, an MSOP social worker, stems from two occasions when James attempted to enforce the MSOP mail inspection policy. On December 28, 2001, James called Plaintiff into her office to discuss a letter addressed to him. The letter appeared to be from a female who lived in Maryland. James told Plaintiff to open the mail in her presence so that it could be inspected. Plaintiff refused to open the letter, so James retained possession of it.

On January 2, 2002, Plaintiff was again summoned to James's office to discuss the incoming letter from Maryland that had been received a few days earlier, as well as an outgoing letter that Plaintiff wanted to mail to someone named "Jessica" at a Texas address. James was concerned that Plaintiff might be trying to contact another young girl, because his outgoing letter had cartoon characters on the envelope. (Affidavit of Debbie James, [Docket No. 28], ¶ 5.) Plaintiff claims that the outgoing letter had already been inspected by an MSOP staff member, (who Plaintiff has not identified), but James says she had been advised that the letter had not yet been inspected. (Id.) Both sides agree that the outgoing letter had been sealed, and that Plaintiff refused to reopen the letter. After Plaintiff made it clear that he would not consent to having the letter unsealed and inspected, James destroyed it in Plaintiff's presence, by running it through a paper shredder.[3]

---

[2] A copy of Plaintiff's mail restriction policy statement is attached to the affidavit of Debbie James. (Docket No. 28.)

[3] According to James, Plaintiff indicated that he would prefer to have the letter destroyed, rather than inspected. (Affidavit of Debbie James, [Docket No. 28], ¶ 6.) Plaintiff says that he told James "I dare you to rip my mail up when you know that's illegal

Plaintiff also once again refused to allow James to inspect the incoming letter from Maryland, and James therefore once again refused to give that letter to Plaintiff. Sometime later, James turned that letter over to the Chief Operating Officer of the MSOP.

Plaintiff now claims that James violated his federal constitutional rights by destroying his outgoing letter, and refusing to deliver his incoming letter. Defendant James contends that Plaintiff's claims against her should be dismissed based on qualified immunity. The Court agrees with Defendant.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). When a motion for summary judgment has been made and supported by the pleadings and affidavits as provided in Rule 56 (c), the burden shifts to the party opposing the motion to put forth evidence demonstrating that a trial is required because a disputed issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In satisfying this burden, however, the non-moving party must do more than simply establish doubt as to the material facts. The party opposing summary judgment may not "rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Matsushita, 475

---

as hell you just cant [sic] destroy my mail cause I wont [sic] open it for you and I know I have the right to return it to the sender." (Affidavit of Dennis E. Mentzos, II, [Docket No. 34], ¶ 14.)

U.S. at 586, n.11; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Fed. R. Civ. P. 56 (e). Pro se pleadings should be given a liberal construction and held to a less stringent standard than attorney drafted pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). However, the plaintiff still must present evidence to defeat a properly supported summary judgment motion and may not rely upon conclusory allegations and unsupported assertions. Dunavant v. Moore, 907 F.2d 77, 80 (8th Cir. 1990).

## III. DISCUSSION

### A. The Doctrine of Qualified Immunity

"Qualified immunity shields government officials from suit unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." Yowell v. Combs, 89 F.3d 542, 544 (8th Cir. 1996), citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A government official cannot be sued for his or her alleged misconduct, if "'a reasonable officer could have believed [the challenged act] to be lawful, in light of clearly established law and the information the [defendant]s possessed.'" Weiler v. Purkett, 137 F.3d 1047, 1049 (8th Cir. 1998) (en banc), quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987). "Qualified immunity protects 'all but the plainly incompetent or those who willingly violate the law.'" Jackson v. Everett, 140 F.3d 1149, 1151 (8th Cir. 1998), quoting Malley v. Briggs, 475 U.S. 335, 341 (1986).

To determine whether a government official is entitled to qualified immunity, a court must perform a two-prong analysis. First, the court must "determine whether the plaintiff has alleged the violation of a constitutional right." Manzano v. South Dakota Dept. of Social Services, 60 F.3d 505, 509 (8th Cir. 1995). Second, the court must determine if the constitutional principle at issue was so clearly established at the time of the defendant's

actions that a reasonable government official would have known that he or she was violating the plaintiff's constitutional rights. Id. See also Weiler, 137 F.3d at 1050 ("First, the court must see if a deprivation of constitutional magnitude has been alleged. If so, the court must determine if that right was so clearly established that a reasonable public official would have known his or her conduct violated the Constitution at the time of the act.")

"For a constitutional right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Manzano, 60 F.3d at 509, quoting Anderson, 483 U.S. at 640. In other words, it "must be apparent" that the defendant's actions are unlawful "in the light of pre-existing law." Anderson, 483 U.S. at 640.

In some recent decisions, the Eighth Circuit has actually divided the second half of the two-prong analysis into two separate subparts – (1) whether the constitutional right in question was clearly established at the time of the alleged violation, and (2) whether a reasonable official would have known that he or she was, in fact, violating that right, given the particular facts of the case. Yowell, 89 F.3d at 544; Mettler v. Whitledge, 165 F.3d 1197, 1202 (8th Cir. 1999). This explanation of the analysis emphasizes that the claimant "must show the [asserted constitutional] right was clearly established in a particularized sense relevant to the case at hand." Id. at 1203 (emphasis added).

B. Defendant's Qualified Immunity

In this case, Plaintiff cannot overcome Defendant James's qualified immunity defense, because (1) the constitutional basis for his claims against James is not clearly established, and (2) a reasonable government official in James's position would not have known that he or she was violating Plaintiff's constitutional rights.

It is important to recognize that this Court has already determined, and the District Court Judge has agreed, (at least implicitly), that the restrictions that the MSOP placed on Plaintiff's mail privileges were reasonable – and therefore constitutional – in light of the well-founded accusations that had been made against Plaintiff. (R&R dated December 20, 2002, [Docket No. 13], at p. 11.) The MSOP had very good reason to believe that Plaintiff was attempting to establish long distance relationships with young girls in order to gratify his prurient sexual interests. It was therefore entirely appropriate that the MSOP should adopt and implement a policy that required the MSOP staff to inspect Plaintiff's incoming and outgoing mail. Furthermore, given Plaintiff's recent interstate sexual exploitation of a thirteen year old California girl, it was both reasonable and understandable that Plaintiff's social worker, Defendant James, would be particularly concerned about the letters at issue here -- an incoming letter that apparently had been sent by a female in Maryland, and an outgoing letter that Plaintiff apparently wanted to send to a female in Texas.[4]

Plaintiff acknowledges that he refused to open either of the letters at issue in the presence of Defendant James. He does not deny that he vigorously opposed Defendant James's efforts to inspect the letters, even though such inspection was required by the mail restriction policy imposed by the MSOP. Given Plaintiff's refusal to comply with the MSOP mail restriction policy, he was properly barred from receiving or sending those letters.

Because it has already been determined that the MSOP mail restriction policy is constitutional, Plaintiff cannot validly claim that James violated his constitutional rights

---

[4] There is evidence suggesting that the incoming letter might have contained photographs, and that the envelope of the outgoing letter had cartoon characters on it. Those factors must have caused Defendant James to wonder whether Plaintiff was soliciting more nude photographs from young girls.

simply by refusing to complete the delivery of the two letters. Thus, the only real issue in this case is whether Plaintiff had a constitutional right to dictate what should happen to any letters that he was barred from sending or receiving because he refused to comply with the MSOP inspection rules. Plaintiff apparently thinks that he had a constitutional right to decide what should be done with such letters, and that Defendant James violated that constitutional right by (a) destroying his outgoing letter, and (b) turning over his incoming letter to the Chief Operating Officer of the MSOP.

However, even if Plaintiff did have a constitutional right to determine the fate of his properly seized mail -- which is an extremely dubious proposition, at best -- that right is not well-established. Plaintiff has not cited, and the Court has not independently located, a single case that comes close to recognizing any such constitutional right. Indeed, it would be quite surprising to find a case holding that a detained sex offender, whose mail has been properly seized pursuant to a valid mail restriction policy, has a constitutional right to decide what should be done with his properly seized mail.

Furthermore, reasonable government officials certainly could not be expected know about the alleged constitutional principle on which Plaintiff's current claim is predicated. More specifically, Defendant James could not have been expected to know that she was (allegedly) violating Plaintiff's constitutional rights when she destroyed and withheld the mail that Plaintiff had refused to open for inspection in violation of a valid mail restriction policy.

## IV. CONCLUSION

In sum, the Court finds that the incoming and outgoing letters at issue in this case were properly seized by Defendant James, because Plaintiff refused to open those letters

in her presence, as required by a valid mail restriction policy. To succeed on his current § 1983 claim against Defendant James, Plaintiff would have to prove that he had a constitutional right to determine what should happen to those properly confiscated letters. Even if such a constitutional right does exist, the nature and contours of that right are not clearly established by existing case law. Furthermore, under the facts of this case, a reasonable government official in the position of Defendant James could not be expected to know that she was (allegedly) violating Plaintiff's constitutional rights by destroying his properly confiscated mail, or turning over such mail to a supervisor. Thus, the Court concludes that Plaintiff's § 1983 claim against Defendant James is barred by the doctrine of qualified immunity.

**V. RECOMMENDATION**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant James's motion for summary judgment, (Docket Nos. 26 and 27), be GRANTED; and

2. This action be DISMISSED WITH PREJUDICE.

Dated: September 22nd, 2003

ARTHUR J. BOYLAN
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly

appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before October 6, 2003.